RESTIVO v. CONKLIN et al.

(Supreme Court, Appellate Division, Second Department. February 28, 1916.)

1. MASTER AND SERVANT ⚖️129—INJURIES TO SERVANT—NEGLIGENCE—PROXIMATE CAUSE.

Where a telephone company failed to furnish a ladder for use by a servant ascending from a manhole, although it protected the manhole from the street by a guard and a red flag, the company, though negligent, is not liable for an injury resulting when the servant extended his hand out beyond the guard onto the street and a wagon driven close to the guard ran over his hand, for the injury could not have been foreseen, and so the company's negligence was not the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. ⚖️129.]

2. NEGLIGENCE ⚖️136—PROXIMATE CAUSE—PROVINCE OF COURT.

Where the facts are undisputed, the question of proximate cause of an accident is for the court.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⚖️136.]

Appeal from Trial Term, Kings County.

Action by Giovanni Restivo against William Conklin and the New York Telephone Company. From a judgment for plaintiff against the latter defendant, and an order entered nunc pro tunc denying defendant's motion for new trial, defendant appeals. Reversed and remanded.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Alexander Cameron, of New York City (Arnold W. Sherman and N. H. Egleston, both of New York City, on the brief), for appellant. Samuel Wechsler, of New York City, for respondent.

JENKS, P. J. The defendant telephone corporation owned and maintained a manhole in a city street for access to its underground system. The neck of the manhole was 35 inches in diameter. The manhole was open on the day in question, but was protected by a guard rail 3 feet high, consisting of a portable folding frame with legs set into the flange or rim, that formed the lower part of the neck of the manhole. A red flag was attached to this guard. The plaintiff, a servant of the said defendant, had gone down into the manhole to work. In returning to the street, up through the neck of the manhole, he placed either hand onto the surface of the street, when at that moment, and when his head was 3 or 4 inches above the surface of the street, the defendant Conklin, a stranger to both of the other litigants, drove his wagon so close to the manhole that the wheel or wheels nearer the manhole passed over the right hand of the plaintiff. Conklin was out of his course, but his testimony is that he was compelled to make the diversion because the side of the street where he should have driven was cut up or obstructed (by whom it does not appear), and also at that moment he had turned out to give way to a street surface car, so that he was compelled to drive very close to the guard

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the manhole. Conklin's wagon did not touch the guard rail, and the evidence is that his wheel passed about 6 inches from it. It follows that the plaintiff's right hand had been put through or under the guard onto the street, and had extended beyond the guard for something more than 6 inches. The jury exonerated Conklin, but held the defendant telephone company liable for negligence.

The case was tried, was submitted, and is now argued upon the proposition that the defendant company committed a breach of its duty in failing to furnish a ladder to the plaintiff. There were five cables on each wall of this manhole, which formed the shape of a ladder on either side. The plaintiff, following the common practice, used these cables as if a ladder. Defendant's witness Honecker testified as to the usual and proper method of ascent from such a manhole, and its expert witness, Glennon, testified in harmony that the customary way to ascend from this kind of manhole is by use of the cables, and as the user emerged from the manhole he should place his hands on the guard rail, and then put his foot on the inner rim of the manhole. The plaintiff and his witness Gaibanco testified that it was impracticable to use the hand rail to assist ascent. On cross-examination Glennon testified:

That he had seen ladders used in manholes, and had put many in. "Q. The customary way of coming in and out is also to use ladders, isn't it? A. Of manholes; yes, sir."

And there was proof elicited from the defendant's witnesses Honecker and Vangeloff that the defendant furnished ladders in manholes. But they also testified that the defendant did not furnish ladders in manholes of so shallow a depth as the one in question, but only in those at least 6 feet 6 inches deep. The defendant's proof is that measurements showed that the depth of this manhole was 6 feet 1 inch. The plaintiff and his witness Gaibanco, who had never gone into this manhole, estimated merely that it was "about" 7 or 7½ feet, or "about" 7 or 8 feet, deep. The defendant's measurements were made eight months and also one year after the casualty, and the plaintiff contended that, as the bottom of the manhole was of soil, the natural accumulation thereof would account for the variance. On the other hand, defendant's witness Glennon testifies that the "dirt there is so compact that it is really of the hardness of concrete," and Vangeloff testifies that no changes had been made therein since the casualty.

The sum of the proof upon this feature does not strike me as sufficient to justify a finding that the manhole was of the kind wherein the defendant was accustomed to furnish ladders. But even if it were otherwise, or if the jury were warranted in a conclusion that ordinary prudence and care should have dictated the furnishing of such ladders, there is no proof that such observance would have prevented the casualty. The record is entirely silent as to the character of the ladder. It does show that such ladders were permanently placed in the manholes. Obviously they must be placed beneath the surface of the street, so adjusted as not to interfere with the closing down of the manhole so that it was level with the street. There is no proof

to indicate that, if the plaintiff had been furnished with such a ladder, he would not have needed, in order to complete his ascent (just as he testifies he needed in the use of the cables), to use his hands by placing them on the surface of the street. The fact that the highest cable was about 2 feet 7 inches from the surface of the street does not establish that a ladder would have dispensed with such need.

[1] Aside from any disputed questions of fact which could have been determined in favor of the plaintiff, I think that this verdict cannot be upheld. For the character of the casualty is not one that might reasonably be foreseen by the defendant as a direct and natural consequence of its omission to furnish a ladder. In this case the master must have seen, as a possible direct and natural consequence of the omission, that a servant, following a custom in the use of the cables as a ladder to ascend at a time when the manhole was protected by a guard and a red flag, might, in the exercise of due care and as a proper part of such ascent, extend his hand for a moment under or through the guard onto the surface of the street for a space of something more than 6 inches, so that, in the exercise of due care, the driver of a wagon in the street, conscious of the guard rail over the manhole, but compelled by the temporary obstruction of the street and the presence of a moving street car therein, might turn his wagon out of its course and drive so close to the guard as to run over the plaintiff's hand, then upon the surface of the street. I think that this case falls within the principle stated by Bartlett, C. J., and illustrated by his citations, in Paul v. Consolidated Fireworks Co., 212 N. Y. at 121, 105 N. E. 795. Proximate cause was not established. Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009; McKenzie v. Waddell Coal Co., 89 App. Div. 415, 85 N. Y. Supp. 819; Jex v. Straus, 122 N. Y. 293, 25 N. E. 478; Hall v. Cooperstown, etc., R. R. Co., 49 Hun, 373–376, 3 N. Y. Supp. 584; Carney v. Minnesota Dock Co., 191 N. Y. 301, 84 N. E. 62; Labatt on Master and Servant (2d Ed.) 1570, citing statement by Willis, J., in Daniel v. Metropolitan Ry. Co., L. R. 3 C. P. 216, 222, approved in Hayes v. Michigan Central R. R. Co., 111 U. S. 241, 4 Sup. Ct. 369, 28 L. Ed. 410; Shearman & Redfield on Neg. (6th Ed. by Street) § 26, note 8.

[2] When the evidence is undisputed, the question of proximate cause is for the court. Hoffman v. King, 160 N. Y. at 628, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715.

I think that upon the theory of negligence, upon which this case was tried, and was submitted, and is now argued, the judgment and order must be reversed, and a new trial should be granted; costs to abide the event. All concur.