## MORGAN v B F GOODRICH CO

Ohio Appeals, 9th Dist, Summit Co

No 2793. Decided Jan 18, 1937

542

Sheck, Marsteller & Wendelken, Akron, for appellee.

Slabaugh, Seiberling, Huber & Guinther, Akron, for appellant.

## OPINION

By WASHBURN, J.

This was an action to recover damages for false imprisonment.

Elmer Morgan was plaintiff in the action, but will be referred to as he appears in this court—i.e., as appellee. The B. F. Goodrich Co., a corporation, was the defendant, and will be herein referred to as the company.

The company is a manufacturer employing thousands of men, among whom were the members of its police department; and one of said members, a watchman on the night shift, was held up within the plant and robbed of his revolver and belt.

Later, members of the police department, acting for the company and within the scope of their authority, and without process from any court or magistrate, arrested appellee upon the streets of Akron and took him to the police department of the company and there questioned him at length in the presence of various persons, and then took him to the police department of the city of Akron, where he was finger-printed, and, in the presence of city detectives, again questioned thoroughly and held as prisoner; he being confined in a locked room and subjected to tests and treatment designed to elicit from him a confession, but he was in no wise mistreated.

The appellee was in ill health, and that fact was known to the police officers of the company.

He was deprived of his liberty for a period of about 5 hours while an investigation was made of the truthfulness of the answers he had given to questions at said two examinations, and, it developing that he was unjustly suspected, he was released from custody.

Only two witnesses concerning the transaction referred to were examined at the trial; the appellee, and the captain of the company police force, the latter being the one who, with other members of the force, arrested appellee.

The trial resulted in a verdict and judgment in favor of appellee in the sum of $6,000. If the jurors believed the testimony of appellee, they were clearly justified in finding that the imprisonment of appellee was wrongful and intentional and without any probable cause therefor.

There being no evidence that the corporation, through its ruling officers, participated or acquiesced in, or ratified, the acts of said police officers of the company, punitive damages against said corporation could not be recovered in the action (Macedonia-Northfield Banking Co. v Jones, 17 Abs 358); but if the action had been brought against the police officers of the company who arrested and imprisoned the appellee, the jurors, if they believed the testimony of the appellee, would have also been justified in inferring legal malice from the lack of probable cause, and failure to investigate and ascertain facts readily available to such company police officers.

In the charge of the court, no reference was made to punitive damages, and all the court charged upon the subject of damages is the following:

"If, under the instructions which I have given to you, your verdict is in favor of the plaintiff, it will be your duty to award to the plaintiff such damages as will fairly and fully compensate him for such humilia-

tion, physical inconvenience, and injury to reputation as he may have sustained by reason of the conduct of the defendant's employees. In no event, however, should your verdict exceed the amount claimed by the plaintiff in his petition."

The court had admitted some testimony relative to humiliation. It is the contention of the company that such evidence should have been excluded and that the court should have omitted from the charge any reference to humiliation as an element of compensatory damages. On this subject, counsel for the company observe that:

"We agree immediately that there are many statements in the books to the general effect that damages in a false imprisonment case may include damages for humiliation, loss of reputation, and the like. An analysis of the cases, however, compels the conclusion that such statements are applicable only to cases where punitive damages are involved, or to cases of malicious prosecution, where false imprisonment is an incident of the prosecution.

"Ordinarily, compensatory damages are not permitted to include compensation for mental distress unless there has been some accompanying physical injury."

There was no claim of physical injury made in the case, although, if the jurors believed the testimony of the appellee, they would have been justified in finding that one of the police officers of the company in making the arrest pointed a gun at the appellee and "put the gun right in my side."

Did the trial judge err in charging as he did as hereinbefore set out?

While it may be that, where emotional distress is the only legal consequence of tortious conduct, no damages can be recovered against the actor, it may fairly be deduced from the authorities that if the actor, by his affirmative tortious conduct (as distinguished from negligent tortious conduct), has become liable for an invasion of any legally protected interest of another, emotional distress caused by such invasion or tortious conduct is taken into account in assessing the damages recoverable by the other.

In the light of the record in this case, the conduct of the police officers of the company of which complaint is made was affirmative, voluntary and intentional, and was wrongful because there was no reason-able cause therefor; and it violated the constitutional rights of appellee.

Under such circumstances, emotional distress may properly be considered in arriving at the damages for such tortious conduct.

In a case where a passenger on a train was wrongfully put off of the same by the conductor before reaching his destination, but the conduct of said conductor was not influenced by fraud, malice or other willful wrong, it was held on the subject of damages that:

"4. In an action for personal tort, an injury to the feelings, naturally and necessarily resulting from the wrongful act, may be considered by the jury in their estimate of compensatory damages, whether the case be, or be not, one in which damages beyond compensation may be awarded."

Smith v Pittsburgh, Ft. Wayne & Chicago Ry. Co., 23 Oh St 10.

We approve of the following statement of Judge Hale in the case of Cleveland City Railway Co. v Alice Ebert, 10 O.C.D. 291, at page 292:

"It seems to be settled by a decided weight of authority that no recovery can be had for injuries resulting from fright, merely, caused by the negligence of another, where no personal injury is received. Mitchell v Railway Co., 45 NE 354; Ewing v Railway Co., 147 Pa. St. 40; Warren v Railway Co., 163 Mass. 484; Spade v Railway Co., 47 NE 88. There are many other cases to the same effect.

"It is equally well settled that if there was a wrongful act on the part of the defendant causing physical injury as well as fright, then the fright and its consequences and mental suffering may be considered in the assessment of damages.

"Just what wrongful act or physical injury will bring the case within this latter rule is not very definitely defined; but an examination of the cases leads to the conclusion that where the tortious act is such as to create a cause of action in favor of the injured person, independent of the fright and shock resulting therefrom, the case falls within the latter rule.

"By the finding of the jury, the railway company wrongfully ejected the defendant in error from its car, from which a cause of action arose in her favor against the company, and in the assessment of damages for such wrongful act, the shock received and her mental suffering might properly be taken into account.

"This question arose, as shown by the record in the rulings made in the introduction of evidence, and in the charge of the court. In neither was there any error."

We find no prejudicial error in the charge of the court on the subject of damages.

It is also urged that the verdict is excessive and the result of passion and prejudice.

There is a variety of opinions among the members of the court upon matters involved in the question of excessiveness of the verdict, and we have had difficulty in arriving at a decision. We shall therefore state our conclusions without referring to the facts or stating reasons.

The members of the court will agree that the verdict is larger than they would have allowed as jurors, and that it is excessive.

A majority of the court do not find that the verdict is the result of passion or prejudice on the part of the jury.

To compose our differences, we all agree that, as to amount, the verdict is against the weight of the evidence, and will be reversed on that ground unless appellee remits $2,000 from the verdict, and that if that be done, the judgment will be affirmed.

FUNK, PJ, and STEVENS, J, concur in judgment.