John P. Gualtieri, J.
This joint claim of the claimants, husband and wife, was instituted to recover damages against the State of New York for injuries received because of the State’s alleged negligence at the Belleayre Ski Center, Pine Hill, on August 28,1958.
The Belleayre Ski Center, maintained and supervised by the State Conservation Department, primarily a Winter skiing activity, is converted each year from Memorial Day until Fall into a Summer recreation and picnic area for the pleasure of patrons who wish to avail themselves of this facility.
The recreation and picnic area is located on the top of a mountain which is reached by a ski tow which runs approximately 2,900 feet from the bottom of the slope to the top. There are five individual chairs, 75 feet apart, attached to a cable by a vulcanized clamp. The chairs are so attached that they can swing laterally and up and down. Each has a back rest, a side foot rest, and a safety bar. The seat has 15 bolted slats two inches wide; the top of each bolt is flush with the surface of the chair; there is a one-half inch space between slats. The rate of speed of the conveyance was 250 feet per minute.
During the hours that the facility is open the tow device operates continuously. There is a safety lever which stops its movement in an emergency; or to stop it for elderly or disabled folks or individuals bearing children in their arms.
There are attendants at the bottom of the slope to give instructions on the use of the chair lift and to assist patrons in the use of it. There are also attendants at the top of the mountain, one of whom stands close to the chairs as they reach the top to give whatever assistance is needed. Many patrons get on the chairs at the bottom and leave the chairs at the top without assistance.
*1024 There were at the time of this occurrence, conspicuous signs posted at various points in the area giving instructions and directions to anyone visiting this center and making use of its facilities.
Among other notices, there were two signs, one at the bottom and one as the patrons approach the top, cautioning people to be sure when dismounting that clothing is not caught in any part of the chair.
On August 28, 1958, claimants in a party of four, at about 2:30 in the afternoon, purchased four tickets for which the regular charge of $1 per person was made by the State. The evidence indicates that when the claimants were ready to go to the top of the mountain the claimant, Mrs. Math, mounted one of the chairs first; a nun, not a member of claimants ’ party, got on the second chair; the claimant husband got on the third chair unassisted.
When they reached the top of the mountain an attendant stationed there assisted Mrs. Math from the chair and also assisted the-nun who was in the chair ahead of the claimant husband.
The claimant husband who was wearing shorts at the time, testified that he attempted to get up from the chair before the attendant reached him. As he did so, he discovered that his shorts had caught onto some part of the chair; he tried to lift himself up again and in so doing he fell sideways. The attendant observing the claimant husband’s predicament rushed to the safety lever and stopped the operation of the tow. During the few moments which elapsed between the claimant’s losing his balance and the stopping of the tow he was dragged along the ground a few feet as a result of which he sustained some injuries, bruises and scratches.
The claimant wife who had already gotten out of her chair safely, observing her husband’s difficulty started to run after the moving chair occupied by him, attempting to help him and in so doing she fell to the ground and also received some minor injuries.
Although the claim alleges faulty construction and maintenance of the ski tow, there is no evidence whatsoever to support this allegation. There is no evidence that any part of the apparatus broke or failed to function properly and no evidence whatsoever on which any negligence can be justifiably asserted.
A mere recital of the facts is sufficient to lead to the conclusion that the sole cause of this accident was claimant husband’s shorts becoming caught in some part of the chair and there is nothing from which the court can infer that this happened by reason of any negligence on the part of the State.
*1025 Proper and safe operation of the conveyance is amply indicated by the fact that the two ladies who preceded the claimant husband were able to alight from their chairs without any difficulty.
An attendant was present who assisted the claimant wife and the nun who preceded the claimant husband. Immediately upon seeing the claimant husband’s predicament, the attendant rushed to stop the movement of the cable. The attendant did all that he could be expected to do under the circumstances.
In this operation the State owed its paying patrons the same duty as is imposed upon a common carrier — to use every reasonable precaution and safeguard to protect the users of this mode of conveyance.
We find that the State in no way violated its legal obligation to these claimants. It follows that the claim must be disallowed. (Vogel v. State of New York, 204 Misc. 614 [1953]; Grauer v. State of New York, l5 Misc 2d 471, affd. 9 A D 2d 829 [1959].)
Because we find no negligence on the part of the State causing or contributing to the injuries of the claimant husband, it is unnecessary, in connection with the claimant wife’s cause of action, to consider the applicability of the rule enunciated in Battalla v. State of New York (10 N Y 2d 237 [1961]) where the court in overruling the long-standing Mitchell case (Mitchell v. Rochester Ry. Co., 151 N. Y. 107) held that under certain circumstances recovery can be had for injuries resulting from fright or sudden emotion brought about by someone else’s negligence.
The claim is dismissed upon the merits and judgment of dismissal is directed accordingly.