Stevens, J. (dissenting).
I would grant summary judgment to the defendant in each case. Since both actions involve the same fundamental question they are treated together.
In each action plaintiffs seek recovery for psychic injuries resulting from the hijacking of a plane in which they, or those they represent, were passengers. The plane in question was *401 on a flight from Tel Aviv to New York when it was diverted to an area near Amman, Jordan, where it remained with its passengers for several days. Undoubtedly, it was a harrowing ordeal and plaintiffs seek to recover for the emotional and physical suffering experienced.
Recovery is sought under the Convention for the Unification of Certain Rules Relating to International Transportation by Air (49 U. S. Stat. 3000) (the Warsaw Convention), and the Montreal Agreement (Agreement C.A.B. 18900, 31 Federal Register 7302).
The question is whether absolute liability is imposed upon the defendant under the Warsaw Convention and Montreal Agreement for emotional disturbances or injuries not resulting from impact. In my view it is not. Resolution of the issue requires some examination of the background of the Warsaw Convention and the Montreal Agreement.
The first draft of the Warsaw Convention (Convention) was about 1926. By 1929 the Convention as we know it was formulated in French. The United States became a signatory in 1934. Several articles, or portions thereof, are of significance in consideration of the present issue. Chief among these is article 17. The language with which we are chiefly concerned follows: “ The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft ”. (Emphasis added.)
The phrase [11] death, wounding or any other bodily injury ” appeared in the 1928 draft (then art. 22, subd. [c]) of the French text as “ en cas de mort, de blessure ou de toute autre lésion corporelle.” (Lowenfeld, Hijacking, Warsaw, and the Problem of Psychic Trauma, 1 Syracuse J. of Int. Law and Commerce, 345, 348.) Professor Lowenfeld notes that the translation “ death, wounding or bodily injury ” is “ as good as any translation can be.”
Article 20 (subd. [1]) of the Convention reads: “ [t]he carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.”
*402 Article 21 states “ [i]f the carrier finds that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier or party from his liability. ’ ’
Thus, we see in the Convention a limitation on the amount of liability, a permissible defense of due care, and a possible defense of contributory negligence available to the carrier. This is consistent with the purposes underlying the Convention’s adoption. “ The over-all principle of the Convention was one of allowing only a regulated burden to be the responsibility of the then struggling carriers. The purposes were to provide uniform rules of limitation concerning the liability of international air carriers to their passengers and to provide a uniform remedy for these passengers to the extent that this remedy would not burden the carrier more than the Convention provisions allowed.” (Eck v. United Arab Airlines, 15 N Y 2d 53, 59.)
On November 15, 1965, the United States deposited a notice of termination of the Convention effective May 15, 1966. The reason for such action was attributed to dissatisfaction with the low limit of recovery provided for by the Hague Protocol of 1955 as it affected United States citizens. The Hague Protocol which amended the Convention, was never ratified by the United States.
Following this action, steps were taken to avoid the denunciation and retain United States membership in the Convention. (See, generally, Lowenfeld, Hijacking, Warsaw, and the Problem of Psychic Trauma, 1 Syracuse J. of Int. Law and Commerce 345.) The result of such efforts is embodied in the Montreal Agreement (Agreement) of May, 1966. The chief results were two-fold: The limit of liability per passenger was raised to $75,000 except in cases where legal fees were awarded separately in which case it was $58,000, and the defense of due care was eliminated. Thus, absolute liability for “ death, wounding or any bodily injury ” was imposed upon the air carriers.
Professor Lowenfeld notes that the meaning of “ bodily injury ” was never talked about at Montreal. Thus, we must' *403 of necessity look at the Convention itself and consider as well the time at which it was drafted. “It is a familiar rule that the obligations of treaties should be liberally construed so as to give effect to the apparent intention of the parties.” (Valentine v. United States ex rel. Neidecker, 299 U. S. 5, 10.) Recognizing the rule, and recognizing as well that any expression in terms may not be absolute when a question arises as to the construction of language and the area intended to be covered, we look to those areas generally cognizable at the time of the writing to determine a basis for relief or recovery. Certainly, psychic trauma was not an area generally embraced within the term “ bodily injury ” at the time or times of the drafting and writing of the Convention. In fact in even so progressive a State as New York, it is not too long ago that the doctrine of Mitchell v. Rochester Ry Co. (151 N. Y. 107, no recovery for injuries resulting from fright without impact) was repudiated, and one was permitted to maintain an action to recover for emotional and neurological disturbances negligently caused (see Battalla v. State of New York, 10 N Y 2d 237).
The term “ death ” in article 17 of the Convention refers to a state usually readily identified. The term “ wounding ” imparts a condition caused by some external force, intentional or otherwise. “ Bodily injury ” when used in conjunction with the words “ accident which caused the damage ” seems to envision impact or contact. The factual background to the writing of the Convention, and the recognized purpose of the Convention belie the view that it intended to include an area where the damages, even if real, could not be ascertained with some degree of precision. If feigned, the then struggling airlines could easily have been bankrupted. In my view, the term “ bodily injury ” is a limitation on wounding.
To apply the law of the forum in determining what constitutes actionable damage is either to disregard the language of the Convention and the Agreement, or to extend their terms to a cause of action not considered by them. Psychic harm or mental anguish as a separate and independent cause of .action was not within the contemplation of the draftsmen of the Con *404 vention. Nor, without impact, should it be considered a compensable element.*
Even as victims of crime are compensated by local governments, Nations could, and perhaps should, create and contribute to a fund to compensate victims of hijacking. Again, the Convention or Agreement could be modified to make explicit provision for such compensation. In my opinion there is no liability here on the defendant under the Convention or the Agreement.
Judgment should have been granted to defendant below (see Lanza v. Wagner, 11 N Y 2d 317, 334) and the complaint dismissed since the plaintiffs rely upon article 17 of the Convention for the fixation of liability.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Rabin ; Judge Stevens dissents in part and votes to modify in a separate opinion.
In Rosman v. Trans World Airlines, Inc.: Order reversed, without costs, the order of Supreme Court, New York County, reinstated and case remitted to that court for trial in accordance with opinion herein. Question certified answered in the negative.
In Herman v. Trans World Airlines, Inc.-. Order reversed, without costs, the order of Supreme Court, Kings County, reinstated and case remitted to that court for trial in accordance with opinion herein. Question certified answered in the negative.

 It might be noted that there is nothing in the case before us to show that defendant negligently or intentionally caused the emotional distress' suffered.